# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

_____

PAULETTE BARCLIFT, on behalf of     :
Herself and others similarly situated,    :
              Plaintiff,     :
                    :
          v.             :        No. 5:21-cv-04335
                    :
KEYSTONE CREDIT SERVICES, LLC,   :
              Defendant.    :

_____

**O P I N I O N**
**Motion to Dismiss, ECF No. 9 – Dismissed**

**Joseph F. Leeson, Jr.**                                   **February 14, 2022**
**United States District Judge**

## I.    INTRODUCTION

This case was brought under the Fair Debt Collection Practices Act (the FDCPA). However a threshold issue that must be addressed in the case is whether the plaintiff has standing to pursue this lawsuit. Does a simple procedural violation of the FDCPA automatically establish a concrete injury, thereby providing the basis for plaintiff to sue? This court concludes that based on the particular facts of this case, it does not.

The FDCPA regulates how debt collectors like Keystone Credit Services, LLC, may collect consumer debts. Its purpose is to stop abusive debt collection practices. One provision of the act prohibits debt collectors from communicating "with any person other than the consumer" in "connection with the collection of a debt." 15 U.S.C. § 1692c(b).

Keystone acquired a personal debt of Paulette Barclift's from her original creditor. It then hired a mailing vendor to print and send Barclift a letter notifying her of the transfer and that Keystone intended to collect.

Barclift brought this class action lawsuit against Keystone, alleging that it had violated the FDCPA by using a mailing vendor. According to Barclift, sharing her personal information with a mailing vendor in order to send her a collection letter violates section 1692c(b) because she did not give her permission to Keystone to do so. Keystone then filed a motion to dismiss Barclift's claim for failing to state a claim upon which relief can be granted.

Before this Court can address the merits of any case, it must have subject-matter jurisdiction over the plaintiff's claims. Subject-matter jurisdiction only exists if the plaintiff has standing. Ultimately, the Court determines that Barclift has not alleged sufficient facts to establish standing because she did not suffer a concrete harm. Thus, the Court dismisses Barclift's complaint without prejudice and dismisses Keystone's motion as moot.

## II.    BACKGROUND

Barclift received a letter from Keystone. *See* Let., ECF No. 1-1 Ex. A. The letter informed her that Keystone had acquired a personal debt of hers from a prior creditor. *See id.* In the heading of the letter were various pieces of information that were personal to Barclift: her name; her address; the name of her original creditor; the date her debt became delinquent; and the balance of the debt. *See id.*

Keystone explained that it would "assume the debt is valid" unless Barclift notified it otherwise within 30 days. *See id.* At the bottom of the short letter was the following bolded statement: "Please be advised that this communication is from a debt collection company. This is an attempt to collect a debt; any information obtained will be used for that purpose." *Id.*

The letter was signed, "Very truly-yours, Keystone Credit Services, LLC." *Id.* Keystone, however, did not actually lick the stamp or drop the envelope in the mail. *See* Compl. 5–6, ECF No. 1. It hired a mailing vendor, RevSpring, to print and mail the letter. *See id.*

RevSpring provides personalized print, online, phone, email, and text communications for other companies. *See id.* 7. In order to use RevSpring's services, Keystone shared Barclift's personal information with the mailing vendor: her name; her address; the name of her original creditor; the date her debt became delinquent; and the balance of the debt. *See id* 5. Barclift never gave Keystone permission to share her information with the mailing vendor. *See id.* 7.

Nearly one year after receiving the letter, Barclift sued Keystone. *See id.* She filed her Complaint as a class action suit, seeking to include as plaintiffs all persons with a Pennsylvania address who received collection letters from Keystone via a mailing vendor. *See id.* 7.

Barclift alleges in her Complaint that Keystone violated the FDCPA by sharing her information with the mailing vendor in connection with the collection of a debt. *See id.* 9. According to Barclift, sharing her information with a mailing vendor without her permission violated her "right not to have her private information shared with third parties." *Id.* 10. She claims that she has been "embarrassed and distressed by the disclosure of her sensitive financial details and personal medical services."[1] *Id.* For relief, she seeks statutory damages, actual damages, costs, attorneys' fees, and injunctive relief. *See id.*

Keystone then filed a motion to dismiss the Complaint for failing to state a claim upon which relief can be granted. *See* Mot., ECF No. 9.

## III.    LEGAL STANDARD

Before a court can address the merits of a dispute, it must first determine whether it has subject-matter jurisdiction over the case. *See Hollingsworth v. Perry*, 570 U.S. 693, 704–05 (2013) ("In light of this overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits

---

[1]    The Court notes that the letter sent to Barclift does not actually state that the debt is one for medical services. *See* Let. Regardless, whether the letter mentions that the debt is from medical services does not change the Court's analysis in this Opinion.

of an important dispute and to 'settle' it for the sake of convenience and efficiency." (Cleaned up)). Article III of the Constitution states that federal courts have subject-matter jurisdiction only over actual "cases" or "controversies." § 2. This limitation on the judiciary furthers the goal of separation of powers by ensuring that courts do not "usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

In order for a case or controversy to exist, several requirements must be met. Chief among those requirements is that the plaintiff suffered an injury-in-fact. In other words, the plaintiff must "prove that he has suffered a concrete and particularized injury." *Hollingsworth*, 570 U.S. at 704–05 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). An injury-in-fact, among other requirements, is known as standing.[2]

If a plaintiff lacks standing, then there is no case or controversy, and a court does not have subject-matter jurisdiction over the plaintiff's claims. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12 (h)(3). Indeed, courts have an independent obligation to assess whether standing exists and "can dismiss a suit sua sponte for lack of subject jurisdiction at any stage in the proceeding." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010).

When determining whether a plaintiff has alleged facts sufficient to establish standing, courts accept the plaintiff's well pled allegations as true and construe the pleadings in their favor. *See Thorne v. Pep Boys Manny Moe & Jack Inc*., 980 F.3d 879, 885 (3d Cir. 2020).

---

[2]     The additional standing requirements are familiar: (1) there must be a causal connection between the injury and the defendant's conduct; and (2) it must be likely that a favorable decision for the plaintiff can redress the injury. *See United States v. Windsor*, 570 U.S. 744, 757 (2013). Since the Court determines that Barclift does not satisfy the injury-in-fact requirement, it does not address the other standing requirements.

## IV.    ANALYSIS

Barclift raises a single claim in her Complaint—that Keystone violated the FDCPA. *See* Compl. 9. Specifically, Barclift takes issue with the fact that Keystone shared her personal information with a mailing vendor without her permission. Barclift alleges that by sharing her information with a mailing vendor, Keystone violated section 1692c(b) of the FDCPA, which prohibits debt collectors from communicating "with any person other than the consumer" regarding the collection of a debt.

In response to the Complaint, Keystone filed a motion to dismiss for failure to state a claim upon which relief can be granted. *See* Mot. In its Motion, Keystone puts forth several arguments. However, before the Court can reach the merits of this case, it must determine whether Barclift alleged sufficient facts to establish standing because the Court does not have subject-matter jurisdiction if she did not.

In its analysis, the Court first discusses (a) a recent Supreme Court opinion addressing standing that sheds light on this case. It then briefly reviews (b) the FDCPA. Finally, (c) the Court applies the discussions in (a) and (b) to this case. Ultimately, the Court determines that it must dismiss the Complaint because Barclift has not alleged facts sufficient to establish that she has standing. Specifically, Barclift's Complaint does not satisfy the injury-in-fact requirement because the alleged harm is not concrete.

### a.   *Supreme Court guidance on establishing an injury-in-fact for a violation of a federal statute.*

In *TransUnion v. Ramirez*, 141 S. Ct. 2190 (2021), the Supreme Court addressed whether a procedural violation of the Fair Credit Reporting Act (the FCRA), a consumer protection statute similar to the FDCPA, created a concrete injury. The FCRA regulates consumer reporting agencies that compile and disseminate consumer information. *See* 15 U.S.C. § 1681 *et seq*. In *TransUnion*,

more than 8,000 plaintiffs brought a class action suit against a credit reporting agency, alleging that it had violated the FCRA. *See* 141 S. Ct. 2190.

The reporting agency compiled a database of potential terrorists, drug traffickers, and other serious criminals by comparing first and last names to those maintained by the U.S Treasury Department's Office of Foreign Assets Control (the OFAC list). *See id.* at 2201. The reporting agency would then alert its customers of any consumers who were in its database and potentially on the OFAC list. *See id.*

The plaintiffs in *TransUnion* were marked as potential criminals in the reporting agency's database because their names matched names on the OFAC list. *See id.* at 2200–02. The problem was that the reporting agency's information was false. The plaintiffs were not actually on the OFAC list. They only shared names with persons on the OFAC list. *See id.* at 2201. The agency shared some of the plaintiffs' false information with its customers, which caused trouble for those plaintiffs.

For example, one of the *TransUnion* plaintiffs ran into problems when he tried to purchase a vehicle. *See id.* The dealership performed a credit check on the plaintiff, and his name triggered a false positive as a potential terrorist on the OFAC list. *See id.* As a result, the dealership refused to sell him a vehicle. *See id.*

The plaintiffs in *TransUnion* argued, among other things, that the reporting agency violated section 1681e(b) of the FCRA, which states, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *See id.* at 2208. According to the plaintiffs, the reporting agency "did not do enough to ensure that OFAC alerts labeling them as potential terrorists were not included in their credit files." *Id.*

The Supreme Court assumed for purposes of its opinion that the reporting agency "violated its obligation under the [FCRA] to use reasonable procedures in internally maintaining the credit files." *Id.* at 2208. Nevertheless, the Supreme Court held that only 1,853 of the plaintiffs had standing. *See id.* at 2209. The other 6,332 did not. *See id.*

Even though the reporting agency had maintained false information for all of the plaintiffs, standing existed only for those plaintiffs who had their false information "disseminated to third parties." *Id.* Absent the dissemination of false information, the remaining plaintiffs lacked standing because they did not suffer a concrete injury. *See id.* at 2210.

The Supreme Court explained that bare procedural violations of a federal statute are not enough on their own to establish standing. *See id.* at 2213 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), as revised (May 24, 2016)). This is true even if the statute states that plaintiffs may bring a cause of action for violations. *See Spokeo*, 578 U.S., at 338–39 ("Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" (quoting *Raines v. Byrd*, 521 U.S. 811, 820, n. 3 (1997)). In other words, "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion*, 141 S. Ct. at 2205 (quoting *Spokeo*, 578 U.S. at 341).

The Supreme Court further explained that concrete injuries can be both tangible and intangible. Tangible injuries, such as physical harms and monetary harms, are obvious. Intangible injuries, such as reputational harms, disclosure of private information, and intrusion upon seclusion, although less obvious, can still be concrete. *See TransUnion*, 141 S. Ct. at 2204.

In determining whether an intangible harm is sufficiently concrete, the Supreme Court has held that courts should consider whether the "alleged intangible harm has a close relationship to a

harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S., at 340–41 (2016).

Turning to the plaintiffs in *TransUnion*, the Supreme Court determined that the reporting agency's database, which falsely identified the plaintiffs as criminals, was closest to the tort of defamation. *See TransUnion*, 141 S. Ct. at 2208–09. As a result, the Supreme Court next asked whether the plaintiffs "suffered a harm with a 'close relationship' to the harm associated with the tort of defamation." *Id.* at 2209.

The Supreme Court noted that "publication" is essential to liability in a suit for defamation. *See* Restatement (First) of Torts § 577 (1938). However, 6,332 of the plaintiffs never had their false information disseminated or published. *See TransUnion*, 141 S. Ct. at 2210. Thus, those plaintiffs lacked standing because the "mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Id.* The Supreme Court explained further, in a footnote, that courts do not "traditionally recognize intra-company disclosures as actionable publications for purposes of the tort of defamation. Nor have they necessarily recognized disclosures to *printing vendors* as actionable publications." *Id.* at 2210 n. 6 (cleaned up, italics added).

In sum, the standing inquiry in *TransUnion* "distinguish[ed] between (i) credit files that consumer reporting agencies maintain internally and (ii) the consumer credit reports that consumer reporting agencies disseminate to third-party creditors." *Id.* Failing to use reasonable procedures in maintaining the plaintiffs' credit files was a procedural violation of the FCRA under both. But a concrete harm existed only in the latter.

The holding in *TransUnion* is not new. *See Spokeo*, 578 U.S. at 341 (rejecting the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right").

It simply reiterated that there is a difference between "(i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." 141 S. Ct. at 2205. "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.*

With that in mind, the Court reviews the consumer protection statute that Barclift brings her claim under—the FDCPA.

### b. The FDCPA: its purpose and legislative history.

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). According to the legislative history of the FDCPA, the act was necessitated by the abusive and deceitful practices of debt collectors. For example, debt collectors sometimes used the following practices: "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." S. Rep. No. 95–382, at 2 (1977). Like the FCRA, the FDCPA provides plaintiffs a private right of action against defendants who violate its provisions. *See* 15 U.S.C § 1692k.

To bring a successful FDCPA claim, Barclift must prove that "(1) she is a consumer, (2) [Keystone] is a debt collector, (3) [Keystone's] challenged practice involves an attempt to collect a 'debt' as the FDCPA defines it, and (4) [Keystone] has violated a provision of the FDCPA in attempting to collect the debt." *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d

351, 358 (3d Cir. 2018) (cleaned up). The FDCPA places certain restrictions on how debt collectors

like Keystone may collect a debt. The relevant provision in this case is section 1692c(b). It states,

> Except as provided in section 1692b of this title, without the prior consent of the
> consumer given directly to the debt collector, or the express permission of a court of
> competent jurisdiction, or as reasonably necessary to effectuate a postjudgment
> judicial remedy, a debt collector may not communicate, in connection with the
> collection of any debt, with any person other than the consumer, his attorney, a
> consumer reporting agency if otherwise permitted by law, the creditor, the attorney
> of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b).

Legislative history offers at least a glimpse of why Congress included the above provision:

"Other than to obtain location information, a debt collector may not contact third persons such as a

consumer's friends, neighbors, relatives, or employer. Such contacts are not legitimate collection

practices and result in serious invasions of privacy, as well as the loss of jobs." S. Rep. No. 95–382,

at 4 (1977).

Although the FDCPA has no doubt helped to cut back on unfair and deceptive debt

collection tactics, it has also, at times, been abused. *See In re FDCPA Mailing Vendor Cases*, No.

CV 21-2312, 2021 WL 3160794, at *2 (E.D.N.Y. July 23, 2021) ("Legions of FDCPA cases that

have little to do with the purposes of the statute have appeared on this Court's docket."). Perhaps a

district court in a sister circuit put it best when it stated, "[t]hese cases are often brought for the non-

salutary purpose of squeezing a nuisance settlement and a pittance of attorneys' fees out of a

collection company, which it will often find cheaper to pay than to litigate." *Id.* Indeed, FDCPA

litigation has turned "into a glorified game of 'gotcha,' with a cottage industry of plaintiffs' lawyers

filing suits over fantasy harms the statute was never intended to prevent." *Id*. at *3.

The abuse of the FDCPA is likely due to the ability to win statutory damages absent proof of

harm, the availability of class action treatment, and the opportunity to be awarded costs and

attorney's fees. *See* 15 U.S.C. § 1692k.  "Incentivized by the promise of easy settlements and

attorneys' fees, counsel representing FDCPA plaintiffs have applied considerable imagination in devising theories of violation." No. CV 21-2312, 2021 WL 3160794, at *3. One of the more recent theories has been referred to as "the so co-called 'mailing vendor' theory of liability."[3] *Ciccone v. Cavalry Portfolio Servs., LLC*, No. 21-CV-2428(JS)(JMW), 2021 WL 5591725, at *1 (E.D.N.Y. Nov. 29, 2021).

Under the mailing vendor theory of liability—the theory that Barclift asserts in this case—the use of a mailing vendor to print and send collection letters to consumers is a violation of the FDCPA. According to Barclift and past plaintiffs who have proposed the theory, the sharing of their personal information with a mailing vendor, which is necessary to populate and send the collection letters, qualifies as a communication "in connection with the collection of a debt" with a "person other than the consumer" in violation of section 1692c(b).

At first glance, the mailing vendor theory seems to fit. After all, a third-party mailing vendor is "a person other than the consumer." And a mailing vendor is not one of the enumerated exceptions listed in section 1692c(b) (the consumer's attorney, a consumer reporting agency, the creditor, the creditor's attorney, or the debt collector's attorney). Moreover, the debt collector must

---

[3]      The Court notes that despite the fact that FDCPA litigation has been going on for decades, and the fact that debt collectors have been using mailing vendors for some time, the mailing vendor theory has only recently gained popularity.

       Indeed, plaintiffs have filed numerous FDCPA cases against debt collectors who use mailing vendors, but they did not bring claims under the mailing vendor theory, and the courts did not take issue with the use of a mailing vendor. *See, e.g., Rogozinski v. NCO Fin. Sys., Inc*., No. CIV.A. 11-2594, 2012 WL 5287896, at *4 (E.D. Pa. Oct. 25, 2012); *Cohran v. Revenue Collect CRA Collections*, No. CIV.A. 12-82-SLR-SRF, 2013 WL 1632681, at *4 (D. Del. Apr. 16, 2013); *Daubert v. NRA Grp., LLC*, 189 F. Supp. 3d 442, 447 (M.D. Pa. 2016), aff'd, 861 F.3d 382 (3d Cir. 2017); *Anenkova v. Van Ru Credit Corp.*, 201 F. Supp. 3d 631, 634 (E.D. Pa. 2016); *Est. of Caruso v. Fin. Recoveries*, No. CV 15-7936 (JS), 2017 WL 2704088, at *5 (D.N.J. June 22, 2017); *Vullings v. Arcadia Recovery Bureau, LLC*, No. CV 17-4361, 2018 WL 3609085, at *6 (E.D. Pa. July 27, 2018); *DeNicolo v. Hertz Corp*., No. 19-CV-00210-YGR, 2020 WL 5816365, at *1 (N.D. Cal. Sept. 30, 2020); *McRobie v. Credit Prot. Ass'n*, No. 5:18-CV-00566, 2020 WL 1181974, at *12 (E.D. Pa. Mar. 11, 2020).

communicate with the mailing vendor in order to share the necessary consumer information to print and send the collection letter. And since the whole endeavor is to send the consumer a collection letter, the communication to the vendor is likely "in connection with the collection of" a debt. *See McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245–46 (3d Cir. 2014) ("communications that include discussions of the status of payment, offers of alternatives to default, and requests for financial information may be part of a dialogue to facilitate satisfaction of the debt and hence can constitute debt collection activity")

Thus, without deciding, the Court believes that a debt collector's use of a mailing vendor to print and send collection letters to consumers is likely, at the least, a procedural violation of the FDCPA. But is it anything more?

For purposes of this Opinion, the Court assumes that Keystone violated its obligation to refrain from communicating with "any person other than" Barclift regarding the collection of her debt when it shared her information with the mailing vendor in order to print and send her a collection letter. Thus, Barclift has sufficiently alleged facts that show that Keystone committed a procedural violation of the FDCPA. A procedural violation on its own, however, is not enough to establish an injury-in-fact.

The question remains, did Barclift sufficiently plead that Keystone's procedural violation of the FDCPA caused her a concrete harm?

### c. *Barclift did not sufficiently plead that she suffered a concrete harm.*

No federal court of appeals has had a final say on whether the mailing vendor theory establishes a concrete harm.[4] However, district courts have tackled the theory many times now. Out

---

[4]    In *Hunstein*, the Eleventh Circuit Court of Appeals held that the mailing vendor theory establishes standing for FDCPA claims. *See Hunstein v. Preferred Collection & Mgmt. Servs., Inc*, No. 19-CV-14434, 2021 WL 4998980, 17 F.4th 1016 (11th Cir.), reh'g en banc granted, opinion vacated, 17 F.4th 1103 (11th Cir. 2021). After *TransUnion* was decided, however, the Eleventh

of all these, the Court is aware of only three that have approved of the mailing vendor theory. *See, e.g., Thomas v. Unifin, Inc*., No. 21-CV-3037, 2021 WL 3709184, at *2 (N.D. Ill. Aug. 20, 2021); *Keller v. Northstar Location Servs.,* No. 21-CV-3389, 2021 WL 3709183, at *2 (N.D. Ill. Aug. 20, 2021); *Khimmat v. Weltman, Weinberg & Reis Co., LPA*, No. 2:21-CV-02944-JDW, 2022 WL 356561, at *6 (E.D. Pa. Feb. 7, 2022).[5]

A majority of district courts have determined that the mailing vendor theory does not establish a concrete injury. *See, e.g., Cavazzini v. MRS Assocs.*, No. 21CV5087ARRST, 2021 WL 5770273, at *6 (E.D.N.Y. Dec. 6, 2021); *Ciccone v. Cavalry Portfolio Servs., LLC*, No. 21-CV-2428(JS)(JMW), 2021 WL 5591725, at *5 (E.D.N.Y. Nov. 29, 2021); *In re FDCPA Mailing Vendor Cases*, No. CV 21-2312, 2021 WL 3160794, at *7 (E.D.N.Y. July 23, 2021); *Stewart v. Healthcare Revenue Recovery Grp., LLC*, No. 3:20-CV-00679, 2022 WL 200371, at *17 (M.D. Tenn. Jan. 21, 2022); *Liu v. MRS BPO, LLC*, No. 21 C 2919, 2021 WL 5630764, at *4 (N.D. Ill. Nov. 30, 2021); *Brown v. Alltran Fin., LP*, No. 1:21-CV-595, 2022 WL 377001, at *6 (M.D.N.C. Feb. 8, 2022); *Nyanjom v. NPAS Sols., LLC*, No. 21-CV-1171-JAR-ADM, 2022 WL 168222, at *6 (D. Kan. Jan. 19, 2022); *Sputz v. Alltran Fin., LP*, No. 21-CV-4663 (CS), 2021 WL 5772033, at *3 (S.D.N.Y. Dec. 5, 2021); *Bush v. Optio Sols., LLC*, No. CV211880GRBARL, 2021 WL 3201359, at

---

Circuit vacated the *Hunstein* opinion pending rehearing en banc. *See id.* Regardless of the ultimate outcome of this Eleventh Circuit case, it is not binding on this court.

[5]      Barclift brings the *Khimmat* court's decision to the Court's attention because it is a sister court in the same district. *See* ECF No. 20. The *Khimmat* court was faced with the same mailing vendor theory, but it did not discuss whether the theory established standing. Instead, it focused on the interpretation of the FDCPA: "this dispute is about whether Congress meant what it said in the [FDCPA]." *Khimmat*, No. 2:21-CV-02944-JDW, 2022 WL 356561, at *1.

Under *TransUnion*, however, this Court agrees with the majority of district courts that the mailing vendor theory does not establish a concrete injury, which is a standing issue. Thus, the real dispute is whether the FDCPA transforms an injury in law into an injury-in-fact. *See TransUnion*, 141 S. Ct. at 2205 ("But under Article III, an injury in law is not an injury-in-fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court.").

*3 (E.D.N.Y. July 28, 2021); *Nabozny v. Optio Sols., LLC*, No. 21-CV-297-JDP, 2022 WL 293092, at *4 (W.D. Wis. Feb. 1, 2022). This Court finds the majority's reasoning persuasive.

The first step is to identify whether the injury Barclift alleges in her Complaint "has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2204 (citing *Spokeo*, 578 U.S. at 341). She claims that Keystone's use of a mailing vendor violated her "right not to have her private information shared with third parties." Compl. 10. The harm Barclift alleges most closely matches the privacy cause of action for public disclosure of private facts. *See* Restatement (Second) of Torts § 652A (Am. Law Inst. 1977).

Under Pennsylvania law, the tort titled "Publicity Given to Private Life" has four elements: "(1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person and (4) is not of legitimate concern to the public." *Perloff v. Transamerica Life Ins. Co.*, 393 F. Supp. 3d 404, 409–10 (E.D. Pa. 2019). In order to satisfy the first element of publicity, "a matter must be made public through communication to either the general public or enough people that the matter is substantially certain to become public knowledge." *Id.* (cleaned up).

Barclift's alleged injury does not need to be a perfect match to the above. *See TransUnion*, 141 S. Ct. at 2204 (explaining that an "exact duplicate" is not required). However, it must bear a close relationship to the type of harm that flows from the original tort of public disclosure of private facts. *See id.* at 2209. Otherwise, "Congress could freely authorize unharmed plaintiffs to sue defendants who violate federal law." *Id.* at 2207. Such a practice "would violate Article III" and would also "infringe on the Executive Branch's Article II authority." *Id.*

Barclift's alleged injury does not bear a close enough relationship to the tort of disclosure of private facts for one major reason—*there was no publicity*.

Barclift did not allege that publicity was given to the private facts. The Supreme Court's guidance in *TransUnion* on this issue appears to be dispositive, even if it appeared in a mere footnote. *See In re FDCPA Mailing Vendor Cases*, No. CV 21-2312, 2021 WL 3160794, at *6 ("While dicta, this language appears dispositive of the mailing vendor theory.").

In the context of a defamation claim, the Supreme Court determined that "disclosures to printing vendors," like the mailing vendor in this case, are not considered a "publication." *TransUnion*, 141 S. Ct. at 2210 n. 6. The bar for satisfying the "publication" requirement in a defamation claim is much lower than the bar for establishing "publicity" in a privacy claim. *See Nabozny*, No. 21-CV-297-JDP, 2022 WL 293092, at *3 ("the extent of publication required to support a claim for publicity given to private life is greater than that required for a defamation claim"). It follows that if sharing information with a printing vendor is not publication for a defamation claim, then it cannot satisfy the requirement of publicity for a privacy claim. *See id*. at *2 ("disclosure to a third party provider of clerical services is not tantamount to disclosure to the public").

Even assuming that the employees of the mailing vendor read Barclift's personal information, sharing her personal information with "a small group of persons is not publicity." *Ciccone*, No. 21-CV-2428(JS)(JMW), 2021 WL 5591725, at *4 (cleaned up). Indeed, the "invasion of privacy requires publicity in the broad, general sense of the word 'public.'" *Tureen v. Equifax, Inc.*, 571 F.2d 411, 418 (8th Cir. 1978). That did not happen here. Nothing in the Complaint suggests that Barclift's information was made available to the broader public, or even to a large group of people. *See Nyanjom*, No. 21-CV-1171-JAR-ADM, 2022 WL 168222, at *5 (finding that a debt collector did not publicize consumer's private information regarding a medical debt by sharing it with RevSpring for letter services).

The 6,332 plaintiffs in *TransUnion* did not suffer a concrete injury because their false information was never published. Here, Barclift has not alleged that she suffered a concrete injury because her private information was never publicized.

Congress may identify and elevate certain intangible harms, but that does not mean that Barclift automatically satisfied the injury-in-fact requirement because the FDCPA prohibits Keystone from using a mailing vendor and purports to authorize her to sue Keystone for doing so. *See Spokeo*, 578 U.S. at 341 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."). Thus, Barclift's allegation of "a bare procedural violation [of the FDCPA], divorced from any concrete harm," does not satisfy the injury-in-fact requirement of Article III. *Id.*

In addition to lacking publicity, the mailing vendor theory that Barclift proposes is not in harmony with the true purpose of the FDCPA.

The FDCPA was passed to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Sending an innocuous letter to notify her of the transfer of a debt is hardly abusive. And using a mailing vendor does not make the practice any more sinister. Congress was concerned with a consumer's information being disclosed "to friends, neighbors, or an employer," not to indifferent mailing vendors. *See* S. Rep. No. 95–382, at 2 (1977); *see also Nabozny*, No. 21-CV-297-JDP, 2022 WL 293092, at *4 ("The record shows that Congress was concerned with disclosures to people who knew the debtor, not limited disclosures to third-party providers of clerical services."); *Cavazzini*, No. 21CV5087ARRST, 2021 WL 5770273, at *6 ("Thus, it appears Congress intended to target certain especially harmful debt collection practices—not all communications by debt collectors to third parties.").

"A debt collector may contact an employee of a telephone or telegraph company in order to contact the consumer, without violating the prohibition on communication to third parties." Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50097-02. And  in many ways, "a mailing vendor is a modern-day stenographer or clerk, briefly viewing the information for the purpose of creating and/or processing a communication." *Cavazzini*, No. 21CV5087ARRST, 2021 WL 5770273, at *6. Sharing Barclift's information with a mailing vendor does not have the same risk of economic or reputational harm that comes with sharing her information with her employer. *See id.* At the end of the day, "[w]hat matters is not so much the amount or the nature of the debt, but to whom the information is exposed." *Sputz*, No. 21-CV-4663 (CS), 2021 WL 5772033, at *5.

The agency tasked with regulating the FDCPA, the Consumer Financial Protection Bureau, has known that debt collectors have used mailing vendors for many years. *See Nabozny*, No. 21-CV-297-JDP, 2022 WL 293092, at *4 (citing Bureau of Consumer Fin. Prot., Study of third-party debt collection operations (July 2016), at 32). So, it is worthy of note that the agency has not taken any action to stop the use of mailing vendors.

The FDCPA is meant to protect the vulnerable from the real harm of abusive, harassing, and deceptive debt collection practices. It is not meant to provide a cause of action for the imaginary harm proposed by the mailing vendor theory. In other words, the FDCPA is meant to be "a shield for debtors, not a sword for lawyers." *See Sputz*, No. 21-CV-4663 (CS), 2021 WL 5772033, at *6 (quoting *Ostreicher v. Chase Bank USA, N.A.*, No. 19-CV-8175, 2020 WL 6809059, at *6 (S.D.N.Y. Nov. 19, 2020)).

In sum, Barclift claims in her Complaint that "the violation of [her] right not to have her private information shared with third parties is concrete injury sufficient to confer standing." Compl. 10. But simply saying so does not make it so. She does not back up her conclusory

statement with any facts of how or why the alleged harm is concrete. *See Brown*, No. 1:21-CV-595,

2022 WL 377001, at *5 (dismissing claim brought under mailing vendor theory because plaintiff's "

bare allegations of speculative harm do not show the kind of public disclosure or reputational harm

caused by tortious disclosure of private information"). She cannot rely on a bare procedural

violation of the FDCPA alone to establish a concrete harm. She therefore has not met her burden of

proving that she has standing. As a result, this Court does not have subject-matter jurisdiction over

this matter and must dismiss it.

V.      **CONCLUSION**

Since Barclift did not plead sufficient facts to show that she suffered a concrete injury, she

did not satisfy the standing requirement in Article III. Without standing, this Court does not have

subject-matter jurisdiction over her claim. It therefore dismisses her Complaint without prejudice.[6]

A separate Order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[6]      The injunctive relief Barclift requests requires that she show that there is "imminent and substantial" risk of future harm. *See TransUnion*, 141 S. Ct. at 2210. The Court determines that Barclift did not plead sufficient facts to meet her burden for injunctive relief for the same reasons that the Complaint did not establish a current concrete harm.