UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

PAULETTE BARCLIFT, on behalf of  :
Herself and others similarly situated, :
                 Plaintiff, :
                  :
         v. :   No. 5:21-cv-04335
                  :
KEYSTONE CREDIT SERVICES, LLC, :
                 Defendant. :

_____

**O P I N I O N**
Defendant's Motion to Dismiss, ECF No. 24 – Dismissed

**Joseph F. Leeson, Jr.**                                                      April 13, 2022
**United States District Judge**

**I.**        **INTRODUCTION**

Paulette Barclift brought suit against Keystone Credit Services, LLC, under the Fair Debt Collection Practices Act (the FDCPA). She claimed that Keystone violated the FDCPA when, in order to send her a collection letter regarding a personal debt, it shared her personal information with RevSpring Inc., a mailing vendor.

The Court determined that even though Barclift alleged that Keystone violated the FDCPA, she had not alleged that Keystone's violation caused her a concrete injury. As a result, Barclift lacked standing. The Court therefore dismissed her original complaint without prejudice because, without standing, the Court lacked subject-matter jurisdiction over her claim.

Barclift then filed an amended complaint, and Keystone filed a motion to dismiss the amended complaint. However, the Court determines that Barclift still has not alleged facts sufficient to establish a concrete injury. So, the Court dismisses her amended complaint with prejudice. Since Barclift lacks standing, and the Court therefore does not have subject-matter jurisdiction over the case, it dismisses Keystone's motion as moot.

## II.     BACKGROUND

### a.  *Alleged Facts*

One day, Barclift received a letter from a debt collector—Keystone. *See* Let., ECF No. 23-1 Ex. A. The letter informed her that Keystone had acquired a personal debt of hers from a prior creditor. *See id.* In the heading of the letter were various pieces of information that were personal to Barclift: her name; her address; the name of her original creditor; the date her debt became delinquent; and the balance of the debt. *See id.*

Keystone explained that it would "assume the debt is valid" unless Barclift notified it otherwise within 30 days. *See id.* At the bottom of the short letter was the following statement in bold: "Please be advised that this communication is from a debt collection company. This is an attempt to collect a debt; any information obtained will be used for that purpose." *Id.*

The letter was signed, "Very truly-yours, Keystone Credit Services, LLC." *Id.* Keystone, however, did not actually lick the stamp or drop the envelope in the mail. *See* Amend. Compl. 5–6, ECF No. 23. Instead, it hired a mailing vendor, RevSpring, to print and mail the letter. *See id.*

RevSpring provides personalized print, online, phone, email, and text communications for other companies. *See id.* 7. In order to use RevSpring's services, Keystone shared some of Barclift's information with the mailing vendor: her name; her address; the name of her original creditor; the date her debt became delinquent; and the balance of the debt. *See id* 5. Barclift never gave Keystone permission to share her information with the mailing vendor. *See id.* 7.

### b.  *Procedural History*

Nearly one year after receiving the letter, Barclift sued Keystone. *See id.* She filed her original complaint as a class action suit, seeking to include as plaintiffs all persons with a Pennsylvania address who received collection letters from Keystone via a mailing vendor. *See* Orig. Compl., ECF No. 1.

Barclift alleged in her Original Complaint that Keystone violated the FDCPA by sharing her information with the mailing vendor in connection with the collection of a debt. *See id.* 9. According to Barclift, sharing her information with a mailing vendor without her permission violated her "right not to have her private information shared with third parties." *Id.* 10. She claimed that she had been "embarrassed and distressed by the disclosure of her sensitive financial details and personal medical services."[1] *Id.* For relief, she sought statutory damages, actual damages, costs, attorneys' fees, and injunctive relief. *See id.*

Keystone filed a motion to dismiss the Original Complaint for failing to state a claim upon which relief could be granted. *See* ECF No. 9. However, the Court never adjudicated Keystone's motion to dismiss. Instead, the Court dismissed Barclift's Original Complaint because she lacked standing. *See Barclift v. Keystone Credit Servs., LLC*, No. 5:21-CV-04335, 2022 WL 444267 (E.D. Pa. Feb. 14, 2022).

The Court determined that Barclift lacked standing because she had not alleged that she suffered a concrete harm. *See id.* *1. In her Original Complaint, Barclift alleged that Keystone had committed a procedural violation of the FDCPA. *See id.* *8. The Court explained, however, that a simple procedural violation of the FDCPA does not automatically establish an injury-in-fact. *See id.* *5 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021)).

Article III of the Constitution, which limits this Court's subject-matter jurisdiction to only actual "cases" or "controversies", required that Barclift allege more than a simple procedural violation in her Original Complaint. In order to establish standing, she had to allege that Keystone's violation bore a "close relationship" to a harm that is traditionally recognized as providing a basis for a lawsuit in American courts. *See Barclift,* 5:21-CV-04335, 2022 WL 444267, at *8.

---

[1] The Court notes that the letter sent to Barclift does not actually state that the debt is one for medical services. *See* Let. Regardless, whether the letter mentions that the debt is from medical services does not change the Court's analysis in this Opinion.

The Court determined next that Keystone's alleged procedural violation of the FDCPA—sharing Barclift's information with a mailing vendor—was most closely related to the traditionally recognized privacy cause of action for public disclosure of private facts. *See id.* The Court explained that a prima facie case of public disclosure of private facts requires that the private facts be publicized. *See id.*

Reasoning that Keystone had not publicized or even come close to publicizing Barclift's private facts by sharing them with a mailing vendor, it determined that Barclift had not alleged that she suffered an injury-in-fact. *See id.* The Court therefore lacked subject-matter jurisdiction over the Original Complaint because Barclift had not satisfied Article III's standing requirement. As a result, the Court dismissed the Original Complaint.

Barclift then filed an amended complaint. *See* Amend. Compl. The Amended Complaint is nearly identical to the Original Complaint. Only the following additional allegations are of any substance:

- "RevSpring operates a total of nine locations nationwide, boasting a presence in eight states." *Id*. ¶ 54
- "RevSpring employs hundreds of employees throughout the country." *Id.* ¶ 55
- "Upon information and belief, after printing and mailing collection letters for its debt collector clients like Defendant, RevSpring maintains electronic copies of those letters for an agreed upon period of time." *Id.* ¶ 56
- "Upon information and belief, while RevSpring maintains collection letter-related information for its clients, RevSpring's employees have access to this information." *Id.* ¶ 59
- "Upon information and belief, RevSpring employees can, or could, access Plaintiff's personal medical and Debt-related information upon Defendant sharing that information with RevSpring." *Id.* ¶ 61.
- "RevSpring has, in the past, allowed public dissemination of private consumer information without the consumer's consent." *Id.* ¶ 63

In the Amended Complaint, Barclift also adds cites to two cases where debt collectors used mailing vendors and courts determined that the plaintiffs had established standing: *Morales v. Healthcare Revenue Recovery Grp., LLC*, 859 F. App'x 625 (3d Cir. 2021) and *DiNaples v. MRS BPO, LLC*, 934 F.3d 275 (3d Cir. 2019).

Once again, Keystone filed a motion to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. *See* ECF No. 24.

### III.   LEGAL STANDARD

Before a court can address the merits of a dispute, it must first determine whether it has subject-matter jurisdiction over the case. *See Hollingsworth v. Perry*, 570 U.S. 693, 704–05 (2013) ("In light of this overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of an important dispute and to 'settle' it for the sake of convenience and efficiency." (Cleaned up)). Article III of the Constitution states that federal courts have subject-matter jurisdiction only over actual "cases" or "controversies." § 2. This limitation on the judiciary furthers the goal of separation of powers by ensuring that courts do not "usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

In order for a case or controversy to exist, several requirements must be met. Chief among those requirements is that the plaintiff suffered an injury-in-fact. In other words, the plaintiff must "prove that he has suffered a concrete and particularized injury." *Hollingsworth*, 570 U.S. at 704–05 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). A risk of "hypothetical harm that is not certainly impending" is not an injury-in-fact. *Clapper*, 568 U.S., at 402. An injury-in-fact, among other requirements, is known as standing.[2]

If a plaintiff lacks standing, then there is no case or controversy, and a court does not have subject-matter jurisdiction over the plaintiff's claims. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12 (h)(3).

---

[2]   The additional standing requirements are familiar: (1) there must be a causal connection between the injury and the defendant's conduct; and (2) it must be likely that a favorable decision for the plaintiff can redress the injury. *See United States v. Windsor*, 570 U.S. 744, 757 (2013). Since the Court determines that Barclift does not satisfy the injury-in-fact requirement, it does not address the other standing requirements.

Indeed, courts have an independent obligation to assess whether standing exists and "can dismiss a suit sua sponte for lack of subject jurisdiction at any stage in the proceeding." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010).

When determining whether a plaintiff has alleged facts sufficient to establish standing, courts accept the plaintiff's well pled allegations as true and construe the pleadings in their favor. *See Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020).

## IV. ANALYSIS

Barclift raises the same claim in her Amended Complaint that she did in the Original Complaint—that Keystone violated the FDCPA. Specifically, Barclift takes issue with the fact that Keystone shared her personal information with a mailing vendor without her permission. Barclift alleges that by sharing her information with a mailing vendor, Keystone violated section 1692c(b) of the FDCPA, which prohibits debt collectors from communicating "with any person other than the consumer" regarding the collection of a debt.

As the Court explained in its prior opinion, alleging that Keystone violated the FDCPA does not automatically establish that she suffered an injury-in-fact. In order to meet her burden of showing that she suffered an injury-in-fact, Barclift must allege that publicity, or something bearing a close relationship to publicity, was given to her private facts. *See Perloff v. Transamerica Life Ins. Co.*, 393 F. Supp. 3d 404, 409–10 (E.D. Pa. 2019). That means Barclift must allege that her private facts were "made public through communication to either the general public or enough people that the matter is substantially certain to become public knowledge." *Id.* (cleaned up). The Court dismissed the Original Complaint because Barclift did not allege that her private facts had been publicized. So, the focus of this Opinion is whether Barclift's additions to the Amended Complaint, which the Court accepts as true, allege that her private facts were publicized, and whether the additions allege a concrete injury.

At first glance, it appears that Barclift simply copied and pasted the Original Complaint over to her Amended Complaint. After careful review, however, some minor additions can be found. In all, Barclift attempts to beef up the Amended Complaint in three ways.

First, she adds allegations that the mailing vendor that Keystone shared her information with has multiple locations and employs hundreds of people. *See* Amend. Compl. ¶ 54–55. She also alleges that the mailing vendor employees "could" have accessed her personal information. *Id.* ¶ 61. However, she does not allege that these employees did access her personal information. Thus, these additional allegations, even when viewed in a light most favorable to her, does not suggest that her private information was actually publicized. The fact that employees could have viewed her personal information is not the same as alleging that employees did view her personal information.

Even if the Court assumed that a large number of RevSpring's employees did view her personal information, this would not satisfy the publication requirement because the "invasion of privacy requires publicity in the broad, general sense of the word 'public.'" *Tureen v. Equifax, Inc.*, 571 F.2d 411, 418 (8th Cir. 1978). Indeed, other district courts have determined that the sharing of consumer information with the very same mailing vendor at issue in this case, RevSpring, is not a "publication." *See Nyanjom v. NPAS Sols., LLC*, No. 21-CV-1171-JAR-ADM, 2022 WL 168222, at *5 (D. Kan. Jan. 19, 2022).

Second, Barclift adds an allegation that "RevSpring has, in the past, allowed public dissemination of private consumer information without the consumer's consent." Amend. Compl. ¶ 63. However, this allegation falls short of establishing an injury-in-fact for similar reasons that the first one does. Barclift alleges that the personal information of *others* has been publicized in the past, but she does not allege that *her* information was ever publicized. The fact that RevSpring publicized the information of others is clearly not a personalized injury for Barclift.

The Court can only assume that Barclift alleges that RevSpring publicized others' information in the past to suggest that it might publish her information someday too. Presumably, Barclift implies that the mere risk that her information could be publicized in the future is enough to establish an injury-in-fact. However, she has not alleged that such a hypothetical is certain to happen. Thus, any fear she may have of a future injury is not sufficient to establish an injury-in-fact. *See Clapper*, 568 U.S. 398, at 402. Indeed, the fact that her information has not been publicized yet—more than one year since she received the letter—suggests that the information will likely never be publicized.

Third, Barclift adds citations to two cases where courts determined that plaintiffs established standing when debt collectors used a mailing vendor. However, both cases differ from the facts of this case.

In both of Barclift's cited cases, the mailing vendors placed personal information on the outside of the envelopes sent to the plaintiffs. *See Morales*, 859 F. App'x, at 626 (mailing vendor placed a barcode on the outside of the envelope that revealed the plaintiff's personal information); *DiNaples*, 934 F.3d, at 278 (mailing vendor placed a scannable QR code on the outside of the envelope that revealed the plaintiff's personal information). As a result, the plaintiffs in those cases brought suit, alleging that the debt collectors had violated section 1692f(8) of the FDCPA, which prohibits debt collectors from placing "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business." 15 U.S.C. § 1692f(8).

The case at hand deals with an entirely different section of the FDCPA. Barclift alleges that Keystone violated section 1692c(b), not section 1692f(8). More importantly, she does not allege that any of her personal information appeared on the outside of the envelope of her letter. In

*Morales* and *DiNaples*, the plaintiffs' personal information was available to anyone who handled or viewed their envelopes. The same cannot be said in this case. In order to see Barclift's personal information, one would have to open the envelope and read her letter. Thus, the cited cases do not support her argument for standing in light of the alleged facts.[3]

For the sake of clarity, Barclift's alleged injury does not need to be "an exact duplicate" of a harm that is traditionally recognized as providing a basis for a lawsuit in American courts. *See TransUnion*, 141 S. Ct., at 2209. In other words, Barclift does not have to allege that her private facts were publicized to the same extent that the privacy tort of public disclosure of private facts would require. However, she still has to get close*, see id,* and the allegations in the Amended Complaint do not get her close enough to prove a concrete injury. Indeed, that some employees of the mailing vendor *could* view her information and that her information *might* be disseminated in the future does not bear a close relationship to any a harm that is traditionally recognized as providing a basis for a lawsuit in American courts.

In sum, the Amended Complaint does not establish standing for the same reasons that the Original Complaint did not. Barclift alleges Keystone committed a procedural violation of the FDCPA, but she does not allege a concrete injury. *See id.* at 2205 (explaining that Article III requires a concrete injury even in the context of a statutory violation). Moreover, Barclift cannot rely on the mere possibility of a future harm to establish an injury-in-fact because she has not alleged that such a hypothetical harm is certain to happen.

---

[3]  In her response, *see* ECF No. 26, Barclift also cites to *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351 (3d Cir. 2018) to support her argument that she alleged a concrete injury. However, in that case, the plaintiff's personal information was visible through a transparent window on the envelope. *See id.* 355. As the Court has explained above, the facts of this case are different because Barclift's personal information could only be viewed once her letter was opened.

9
041322

## V. CONCLUSION

Since Barclift did not plead sufficient facts to show that she suffered a concrete injury, she did not satisfy the standing requirement in Article III. Without standing, this Court does not have subject-matter jurisdiction over her claim. It therefore dismisses the Amended Complaint with prejudice.[4]

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[4] The Court dismisses the Amended Complaint with prejudice because Barclift had an opportunity to cure her claim's deficiencies but did not. Any additional amendments would therefore be futile. *See Boyd v. New Jersey Dept. of Corrections*, 583 Fed. Appx. 30, 32 (3d Cir. 2014).